IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GEORGETTE H. BYNUM, )
)
Plaintiff, ) Civil No. 99 CV 2266-SBC
)
v. )
)
EQUITABLE MORTGAGE GROUP, et al., )
)
Defendants. )
)

## MEMORANDUM OPINION AND ORDER

In 1997, Georgette Bynum contacted Equitable Mortgage Group, Inc. ("Equitable") to refinance her home mortgage. *See Bynum v. Equitable Mort. Group*, No. 99 CV 2266, 2005 U.S. Dist. LEXIS 6363, *4 (D.D.C. Apr. 7, 2005). Bynum sought $10,000 in cash for home improvements. *Id.* Equitable submitted Bynum's refinancing loan application and financial information to First Government Mortgage and Investors Corp., a mortgage lender, who offered Bynum a $75,000 refinancing loan. *Id.* at *6. The proceeds of the loan paid: (1) $53,417.24 to retire Bynum's prior mortgage; and (2) $3,680.81 to the District of Columbia to fully pay delinquent real estate taxes. *Id.* at *8. Bynum also received a $9,162.55 check, made payable to her, that reflected the funds generated to her from the refinancing. *Id.* at *8-10. Bynum endorsed the check and gave it to a man named Tim Byrd for home improvement repairs. *Id.* Byrd disappeared with the check and no repair work was completed. *Id.*

Bynum ceased making payments on the loan after February 5, 1999 and foreclosure proceedings were initiated. *Id.* at *10. Bynum sent a letter to ContiMortgage and First Government on August 3, 1999, providing notice of her intent to rescind and cancel the note and deed of trust.

1

*Id.* First Government assigned Bynum's promissory note and deed of trust to ContiMortgage Corp. *Id.* at *10. ContiMortgage filed a suggestion of bankruptcy and Manufacturers and Traders Trust ("Manufacturers") became the holder of Bynum's promissory note and deed of trust. *Id.*

Bynum sued Manufacturers, holder and assignee of her mortgage, under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Home Ownership and Equity Protection Act ("HOEPA"), codified as amendments to TILA, and for various other state and common law actions.[1] On April 7, 2005, the court determined that Bynum's mortgage constitutes a high cost loan under HOEPA, 15 U.S.C. § 1602(aa). *See Bynum*, 2005 U.S. Dist. LEXIS 6363 at *29-30. Because it was undisputed that Bynum did not receive required HOEPA disclosures in a timely fashion, the court determined Bynum acquired a statutory right to rescind the deed of trust within three years of the transaction's consummation. *Id.* Further, the court held Bynum acquired a statutory right to rescind under TILA due to inadequate disclosure of finance charges. *Id.* at *32-33. However, the court declined to order rescission without suggestions from the parties for structuring the rescission remedy, given that rescission would render the entire loan transaction and security interest void without addressing the benefits Bynum received in the form of satisfied debts. The parties were ordered to meet and confer regarding a mutually agreeable rescission plan under 15 U.S.C. § 1635(b) or, if unsuccessful, to brief the rescission issue. The parties' briefs on rescission are before the court.

---

[1] In her third amended complaint, Bynum also sued Equitable and Dimarcus Waldo, proprietor of Dutchmans Home Improvement Co. The clerk entered default against Waldo on 9/23/03. Dkt. No. 82-1. The court granted Equitable's summary judgment motion. *See Bynum v. Equitable Mort. Group*, No. 99 CV 2266, 2005 U.S. Dist. LEXIS 6363 (D.D.C. Apr. 7, 2005).

## DISCUSSION

Congress enacted TILA to prevent consumers from being misled about financing costs and to assure meaningful disclosure of credit terms. *See Cooper v. First Gov't Mort. and Investors Corp., et al.*, 238 F. Supp. 2d 50, 54 (D.D.C. 2002). Faced with increasing reports of abusive practices in home mortgage lending, Congress amended TILA and enacted HOEPA to require greater disclosures to borrowers involved in high cost loans and to stop certain loan terms and practices. *Id.* Violations of TILA and HOEPA may provide the borrower with a rescission remedy. *See e.g.,* 15 U.S.C. §§ 1632, 1635, 1639. According to 15 U.S.C. § 1635(b), the creditor's security interest becomes void upon rescission and the borrower is no longer liable for any finance or other charges. Within 20 days of receiving notice of rescission, the creditor is to return any money or property and acknowledge termination of the security interest. 15 U.S.C. § 1635 (b). When the creditor has met these obligations, the borrower is to tender the property or its reasonable value. *See id.* The sequence of rescission and tender must be followed *unless the court directs otherwise. See id.*; *see also* 12 C.F.R. § 226.23.

Section 1635(b)'s provision permitting a court to modify the sequence of procedures was added after courts held the statute need not be interpreted literally as requiring the creditor to remove its security interest prior to the borrower's tender of proceeds. *See e.g., Yamamoto v. Bank of New York*, 329 F.3d 1167, 1170 (9th Cir. 2003). The rescission remedy remains subject to equitable considerations and the court has the equitable power to condition rescission upon return of loan proceeds. *See Brown v. Nat'l Permanent Federal Sav. and Loan Assoc.*, 683 F.2d 444, 447 (D.C. Cir. 1982). The court may impose conditions on rescission that assure the borrower meets her obligations once the creditor has performed its obligations.

3

In considering the appropriateness of modifying § 1635's rescission procedures, the parties dispute the amount of money Bynum must tender. Further, the parties dispute the appropriate structure of the rescission remedy: whether Manufacturers must release the security interest and seek the return of funds as an unsecured creditor or whether rescission should be conditioned on Bynum's tender of benefits.

A.  **Tender Amount**

The parties agree that Bynum is responsible for $53,417.24 paid to retire her prior mortgage and $3,680.81 paid to retire delinquent real property taxes. The parties also agree that Bynum is not responsible for loan charges in the amount of $7,368.33. The parties dispute whether Bynum is responsible for the following charges:

  1.  **Settlement Check**

It is undisputed that Bynum received a $9,162.55 check, made payable to her, reflecting funds generated directly to her from the refinancing. Bynum endorsed the check and gave it to a man named Tim Byrd for home improvement repairs. Ultimately, Byrd disappeared with the check and no repair work was completed. Bynum contends she therefore received no benefits from the $9,162.55 check and should not be responsible for those funds. This argument must be rejected.

TILA's rescission procedures are "clearly designed to restore the parties as much as possible to the *status quo ante*." *Sosa v. Fite*, 498 F.2d 114, 119 (5th Cir. 1974). "[W]hen rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due." *Powers v. Sims & Levin*, 542 F.2d 1216, 1222 (4th Cir. 1976). The $9,162.55 check given to Bynum for use at her disposal constitutes part of the lender's legal due.

4

The settlement agent wrote Bynum a check from the loan proceeds. Her transfer of that check to a third party, instead of depositing the check into her own account, was in no way due to any actions of the original lender or the settlement agent. Bynum may pursue compensation from Byrd or any related wrongdoer. Manufacturers shall not be required to absorb the loss. Bynum is responsible for the $9,162.55.

### 2. Property Taxes After Loan Transaction

Manufacturers attaches documentation that it paid $9,124.05 in real estate property taxes Bynum accrued, but did not pay, over the course of the loan. *See* Manufacturers Brief at Exs. A-C. Because the property taxes were paid on her behalf through escrow advances from the loan, Bynum is responsible for the $9,124.05 in taxes.

### 3. Hazard Insurance Premiums

Manufacturers seeks $2,940.18 paid in hazard insurance premiums over the course of the loan. However, the court determined imposing hazard insurance on Bynum at closing was not *bona fide* or reasonable. *See Bynum*, 2005 U.S. Dist. LEXIS 6363 at *25-26. Indeed, the court determined the required hazard insurance was illegally imposed under D.C. Code § 26-1115(b), which prohibits a lender from requiring the escrow of hazard insurance if the borrower has equity worth more than 20% of the property's fair market value. *Id.* Bynum is therefore not responsible for charges incurred on account of hazard insurance.

### 4. NSF Fees

Manufacturers seeks $60 in NSF fees it paid when Bynum made three loan payments for which she lacked sufficient funds. While the lender is entitled to return of loan proceeds, the trivial and ancillary NSF fees were not part of the loan transaction and Bynum did not benefit from these

5

fees as part of the loan transaction. She is not responsible for tendering $60 in NSF fees as a condition of rescission.

### 5. May Department Stores and McGuirk and Associates

Finally, Manufacturers seeks $496 paid to May Department Stores and $875 paid to McGuirk and Associates as part of the loan settlement. While these charges appear on the HUD settlement statement, it is evident from summary judgment that imposition of charges does not necessarily mean the charges were valid or appropriate. Bynum has repeatedly denied knowledge of indebtedness to these entities. *See* Bynum Brief at 6. Manufacturers asserts it is contacting May and McGuirk to obtain documentation that the debts were validly paid. However, two months have elapsed since Manufacturers filed its brief and no additional documentation has been submitted to the court. Accordingly, Manufacturers has not established it is entitled to the $1371 in unsubstantiated fees.

### 6. Total Tender Amount

Bynum is responsible for: (1) $53,417.24 paid to retire her prior mortgage; (2) $3,680.81 paid to retire delinquent real property taxes; (3) the $9,162.55 settlement check; and (4) $9,124.05 in real estate property taxes incurred after the loan's consummation. The total amount to be tendered equals $75,384.65, less any payments Bynum made on the loan. Bynum contends she paid $11,331.39 before ceasing payment on the loan. Manufacturers asserts three payments were returned for insufficient funds and Bynum's payments therefore totaled $8,798.18. Although Bynum submits a document purportedly supporting her $11,331.39 figure, the one-page document is vague, lacks identification and is completely devoid of any authentication. *See* Bynum Brief at Ex. B. In contrast, Manufacturers' business records support the $8,798.18 total figure. *See* Manufacturers Brief at Exs.

F-G. Therefore, Bynum must tender $66,586.47 ($75,384.65 less $8,798.18) as a condition of rescission.

B.  **Structure of Rescission**

"Under the Truth-in-Lending-Act, the right of rescission is granted by statute but application of the remedy is governed by equitable principles." *Brown*, 683 F.2d at 449. Although Bynum argues Manufacturers should be required to drop its security interest and be left as an unsecured creditor, Bynum's right to rescission must be conditioned upon her return of the $66,586.47 in benefits gained. First Government's HOEPA and TILA violations were not readily apparent on the face of the documents. The violations were therefore not obvious when Manufacturers, as assignee, purchased the loan. Most importantly, placing conditions on rescission is appropriate because of the nature of benefits Bynum received. While the court has determined Bynum acquired $66,586.47 in net benefits from the loan transaction, it is entirely undisputed that Bynum received at least $57,098.05 in benefits and has been living in her home payment-free since February 1999.

Bynum requests 180-days to raise the tender amount due to her age and failing health. *See* Bynum Brief at Ex. C. She attests she will obtain the funds either by acquiring a reverse mortgage or by selling her home. *Id.* In support, she submits a current tax assessment reflecting the property as having a $273,370 value. *Id.* at Ex. D. Manufacturers does not object to providing Bynum 180-days to raise the tender amount. Manufacturers is concerned, however, that recent liens may encumber the property, thereby diminishing its value. Further, Manufacturers seeks interest on the tender amount to impress upon Bynum the seriousness of her repayment obligations. Manufacturers' concerns are adequately addressed by requiring Bynum to pay the entire tender amount within six

7

months. If she is unable to pay the entire tender amount, Manufacturers will retain its lien on the property. Bynum is therefore ordered to tender $66,586.47 as a condition of rescission.

## CONCLUSION

Bynum is ordered to pay Manufacturers $66,586.47 in certified funds by January 23, 2006. Manufacturers shall release the deed of trust securing the loan and file any necessary and appropriate documents to effectuate the release within 20 days after receipt of the $66,586.47 in certified funds.

July 21, 2005

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge